Mr. Ping, you're going to introduce our student counsel today. Yes, good morning your honors. May it please the court, John Pang with the Georgetown University Law Center's Appellate Litigation Clinic. With the court's permission, third-year law student Jennifer Campos will present arguments on behalf of the petitioner. All right, thank you very much. Ms. Campos, we're glad to hear from you when you're ready. Good morning, your honors, and may it please the court. Ms. Montesinos Cisneros is eligible for cancellation of removal because she complies with all three requirements of Section 1229 B.A., including the requirement that she establish seven years of continuous residence after having been admitted in any status. In 1994, Ms. Montesinos Cisneros was admitted in any status at Dulles Airport. Ms. Montesinos was admitted when she presented herself for inspection to an immigration official at the airport. That immigration official So, tell us why you say she was admitted as opposed to paroled. Your honor, she was admitted because she presented herself. An admission is a lawful entry after inspection and authorization to enter by an immigration official. And in this case, Ms. Montesinos presented herself and the immigration official communicated to Ms. Montesinos that she had been admitted through the admitted stamp in her passport as opposed to being paroled. So, is that stamp what you say differentiates her from a parolee? Yes, your honor, because it is what the immigration official communicated to the applicant to admission. And we look to the actions of the immigration official to see, determine what a person's entry designation is. Who are we judging that based on, right? So, I mean, I take you to be saying there that like this is the sort of commutative content of what was done and that somebody reading that piece of paper and the information on that piece of paper would have understood that to be an admission rather than a parole. Is that like an objective inquiry? Is this sort of like a statutory question? Like, what do we think the public would have understood? Is it like specific to your client? Who do you think we should judge that? Because there's some ambiguity about what that meant, right? Because it has two conflicting ideas. It says admission, but it says DED, which is obviously not admission. And so, can you help me understand who's the sort of audience that we're trying to think of the commutative content being given to? Your honor, BIA cases like Matter of Quilantan and Matter of Arreguin tell us that we focus on what the immigration official communicates to the applicant for admission. And so, in this case, through the admitted stamp. Even if they're wrong? We don't believe the immigration official here was wrong. What happens if the immigration official makes a mistake? Your honor, it depends on the situation. In this case, because Ms. Montesinos presented herself, showed all her documents, and the immigration official had the opportunity to inspect them and then authorize her admission into the United States. And the immigration official has discretion in what to do at that point, right? Admitted isn't the only stamp the immigration official has. Yes, your honor. The immigration official could choose to deny them entrance, parole them, but in this case, the immigration official chose to admit Ms. Montesinos into the United States. The immigration official did not exercise his or her discretion to parole. They stamped admitted, correct? Exactly, your honor. An admission only requires... Well, what if the, if she could only be a parolee? Because she was only here under this deferred action classification. And when she was admitted, it was DED until December 30, 1994. Why doesn't that translate into a parole status? Your honor, kind of two points on this. The first one being that the notation, the DED notation underneath, they're kind of speaking to two separate issues. So, admission and status are two separate concepts in immigration law. And so, the admitted portion of the stamp is communicating to Ms. Montesinos that she was admitted, that that was her entry designation as opposed to parole. Whereas, the DED notation underneath is communicating to Ms. Montesinos, this is a status that you have when you're in the United States. And so, they're two separate things in that way. Well, would you agree if we found that she was a parolee and not admitted, then she can't qualify? If your honors were to find that she was not admitted on December of 1994, yes, your honors. Can you go back to the question that I believe Judge Agee asked, or I understood you to sort of answer, of what happens in the scenario where there's, obviously, this is not this case, right? So, except it is hypothetical, where there's complete fraud. So, somebody shows up at the border and it's at fraud all the way down. And the guy doesn't, the person doing the collection doesn't catch it. And stamps admitted and the person comes in. Is your view that that is an admission? And if so, sort of in answering that, I understand that that person would have offered themselves for inspection. But the statute doesn't just limit it to offers for inspection, right? It also says that they have a lawful entry. And so, it seems like in that instance, the fraud would mean it's not a lawful entry, even though there's an admitted stamp on there. In that hypothetical, not your case, I understand. Is that, would that be an admission merely because there's the stamp that's there, even if all the documents to get that stamp were indeed fraudulent? Your honor, if that fraud were in the form of a person passing themselves off to be a U.S. citizen, then that would be a procedurally irregular admission. And so, in that case, it would not be a proper admission. And I guess the word lawful in the statute is telling us that it has to be procedurally regular. A person has to present themselves, make no false claims to U.S. citizenship, has to be inspected, and then- So, where do we get the procedural regularity as that being the only meaning of lawful? So, I understand one example that would not be a lawful entry is one that's a procedurally irregular entry. So, that's, I take that's your answer to the fraud example. Why do you limit the word lawful entry in that context to procedural irregularity, right? So, that doesn't say that, right? It says lawful. So, why are you equating those two? Your honor, in cases like a matter of Philanthropy from the BIA to La Rubio, Saldivar, all these cases, those are from the Fifth and the Ninth Circuits. Maybe let's start with like a statute rather than a BIA decision that I can't give deference to anymore, or another circuit that's not binding. Like, why when I read the words in the statute, and one of the challenges is we've been deferring to the BIA, we don't do that anymore, we now have to look at like what statutes actually mean. And lawful entry to me certainly includes this procedural irregularity point that you've agreed to here, but I don't understand why it's so limited. Your honor, admitted has kind of been interpreted to only require procedural regularity. There is no substantive legal requirement to the definition of admitted. But isn't that odd? Because the statute has two different parts, right? It says admitted means, and it has two things. One is that there's a lawful entry, and two is that they do so procedurally after inspection and evaluation or whatever the precise language is. But the procedural piece is actually the second clause of the sentence. Like lawful entry is a distinct requirement in the statute. And if you read lawful entry to just mean the procedural piece, then you just read it out of the statute. It no longer is part of the statute. And so I guess I have a hard time understanding why I should read lawful entry to mean the second clause when it's a standalone clause. And then I don't know what lawful entry means if I'm just saying you just have to present yourself. Do you understand my consternation? I'm just trying to, I literally am just trying to figure out what this thing means. Yes, your honor. I guess the focus here is on the word, what the word after is doing. So it's telling us that in order for a lawful entry to be effectuated, the person has to present themselves for inspection and be authorized to enter the United States. But then you wouldn't use the word lawful, right? Because then you would just say, when you have an entry after the procedural piece, right? So the lawful has to do some other work other than just the procedure that follows at the end of the statute, right? Because otherwise, it's just repetitive. So that wouldn't make sense. So if you just wanted it to be the procedural piece, if all that was required for admission was entry following proper procedure, right, you wouldn't use the word lawful. Lawful has to mean something more than just the proper procedure. Otherwise, the statute doesn't make sense. A lawful entry after these things means that after is not the only thing. It also has to be lawful. Your honor, the fact that it follows that it's lawful entry after inspection and authorization, I believe still means that it has to just be procedural regularity. And it's kind of in distinction to all unlawful entries, which is when a person completely evades inspection. A minute ago, I think you were going to talk about the Fifth Circuit case, the Tullio-Rubio. And since the Fifth Circuit does so many intermigration cases, I would like to hear what you had to say about that opinion. Yes, your honor. So in that case, that was the case of a way through admission. And so that person showed up to a port of entry, had no kinds of documents entitling them to enter, well, just entry documents. But the immigration official communicated to them through a way through that they had been admitted. And so in that case, the court found that that person had been admitted and in any status because in any status was written so broadly that it encompassed kind of any and all statuses. And just waving them through counted as admitted for the Fifth Circuit, correct? Yes, your honor. Where here you have an actual stamp, the words admitted. So to me, that seems like you have a stronger argument than the Fifth Circuit found in Tullio. Certainly, your honor. One could argue that this is even more procedurally regular because she walked up to the immigration official at the airport, presented her documents, the immigration official inspected her, and then stamped her. And the person in question in that Fifth Circuit case wasn't even the driver of the vehicle, right? They were a passenger. That's correct, your honor. The driver was a U.S. citizen, but the person themselves was simply a passenger with no documents to enter the United States. Yes. So kind of speaking to the issue of status, Ms. Montesinos had DED status at the time that she was admitted. Status itself is not defined anywhere in the INA, but we know that dictionaries define it as a person's legal condition. And because of the phrasing in this subsection, status is, I mean, any status is so broad that certainly somebody, Ms. Montesinos' non-priority DED status would qualify under this as well. But under your reading, anything qualifies as status. Yes. Yes, your honor. And that is also how... I'm just saying an odd way to write the statute if there are no constraints. Your honor, that is the way that Congress wrote it. But that... I mean, you probably didn't fly up here because you're from Georgetown, but, you know, if you get on an airline and they, you know, they say, like, if you have any status, you can board now, right? The answer of, like, I've never flown is not, like, an answer that gets you, like, boarding. Like, any status, like, has, like, commutative content that is not encompassing no status. Your honor, DED is a form of status. Those are two different arguments. So I understand that argument that you think DED is a status. And that's... I very much understand that argument. I was... I thought you were suggesting to Judge Agee that it also includes, like, no status. So someone who arrived here illegally with no inspection, that person has a status in the vague sense of the word, right? They're here illegally, right? And I understand you to sort of be making both of these arguments. One, that it's so broad that whether DED is itself a status doesn't matter because any status, including no status, is encompassed. And then you separately make the argument that DED is, as a term of art, a status. I understand the second one, but the first one seems like a really hard argument, right? Which is that even illegal or no status qualifies as any status. Your honor, the INA... in the INA, Congress included things like unlawful status. And so even people who come here illegally to the United States, those people still have a status. It's unlawful status. And so that is why we... So is there anybody who would not have a status? No, your honor. No, because the phrasing is so broad. In other sections... And that's what the Fifth and the Ninth Circuit have both found? They read it to be as broad as we're arguing here today, your honor. Are there any circuits that have read it otherwise? Not that we could find, your honors, as far as I'm concerned. But yes, I mean, it's phrased very broadly. In other sections of the INA, when Congress wants to specify lawful or unlawful status, it does so. And the fact that here they chose to use such broad language as any status tells us, kind of communicates what Congress intended in this subsection. Because Congress knows how to use the word legal when it wants to, that Judge Richardson was asking you all about legal entry earlier. Yes, yes, your honor. When Congress wants to specify that, it does so. And the fact that it didn't here tells us what Congress wanted here. If your honors have no further questions, I'm happy to... You've got some rebuttal time. Yes, thank you, your honors. Okay. Well, we've lost our lawyer. Sorry, I just had to unmute myself, your honor. Okay. Mr. Robbins will tell us what the government thinks. Okay. Jonathan Robbins here on behalf of the Attorney General, your honors. Thank you for accommodating the remote argument in light of the lapse of appropriations. We're very familiar with the lapse of appropriations. Yes. As you just discussed with my colleague on the opposite side of the podium, the key question in this case pertains to whether the agency correctly found that the petitioner failed to establish the requisite continuous residence such that she would be eligible for cancellation of removal. And of course, the government contends that she was not admitted in any status until November of 2006 when she adjusted her status to that of a lawful permanent resident under NACAR. Now, of course, the petitioner is contending... Is there a threshold question here before we would get to status that the alien is either admitted or paroled, which makes the distinction that if we were to conclude the alien was paroled, we would not deal with the status question? That's correct. The statute says admitted in any status. So, the first part would have to be an admission. All right. So, tell us what the government says on why she was admitted or paroled. Sure. So, well, we start with what the facts of the case are. The petitioner applied for advanced parole. She concedes that in her opening brief. She also concedes that she used the advanced parole, and that is consistent with the evidence that we have in the record, which shows that the immigration officer specifically wrote DED into the stamp. Now, Your Honor has asked a question about... Into the stamp that said admitted at the officer's discretion. Could the officer have stamped it paroled? Well, I don't know exactly what stamp the officers had at the time. That's not clear. But the immigration judge did make a factual finding in this case that it appears to have been a mistake to use the admitted stamp by the immigration officer. Now, of course, factual findings are reviewed by this court for substantial evidence. So, in order to overturn that factual finding by the immigration judge, the court would have to find evidence so compelling or so overwhelming that no reasonable fact finder could have found as the immigration judge did. But I think the immigration judge reached the reasonable conclusion... But haven't we held that admission does not require any specific visa or status in that Mauricio Vasquez opinion? Not in the context of this statute. So, there's a big... The answer is yes, we have. We did make that holding, right? Not with respect to cancellation of removal. Why does that matter? Because the language in the statute is different. So, a lot of the talk of the petitioner is bringing up, it has to do with procedural regularity in the context of admission for the purpose of adjustment of status. That statute does not use the term that the cancellation statute uses. That just uses the term admission. And the board in its case law pertaining to procedural regularity and whether that constitutes an admission in cases where there are sort of wave throughs and where it's held that that's an admission, that's where admission is a term by itself in the statute. That's not what we have here. The term we have here is admitted in any status and that's an important distinction. So, the petitioner is trying to graft on a whole different body of case law that pertains to a different statute to this statute which has different language. And getting back to your honor's question, I know you asked a question of my colleagues in the opening presentation about the immigration officer's discretion. The immigration officer does not have discretion to admit people who are inadmissible. So, we know from the stamp because he wrote DED that he knew why they were coming in. DED does not entitle somebody to be admitted to the country. Without that advance parole document, the petitioners would not have had valid travel documentation and that would have rendered them inadmissible to the United States. This is one of the points that the board has made in matter of Castillo and Gullo and that the dissent made in the Ninth Circuit's decision in Saldivar v. Sessions. This notion that you can be admitted... What about the Fifth Circuit? What would you do with the Fifth Circuit case, with the wave through case? Again, the wave through cases have to do with adjustment of status. That's a different statute. It's not the cancellation removal statute which has different language. That's the language admission in the adjustment context versus admitted in any status in the cancellation context. I would also point out that the Fifth Circuit case didn't have a situation where the individual was paroled into the United States. And that's very important because the statute could not be more clear. So, admitted meant admitted in the Fifth Circuit case, but admitted doesn't mean admitted here. The adjustment of status context has different problems with regard to admission than does the cancellation. But the fact that the statutes use different terms is important. That's one of the things that the board pointed out in matter of Castillo and Gullo when it refuted the reasoning of the Fifth Circuit and said even though it would adhere to that in the other circuits where that was not binding. And look, your honors, I understand that whenever a sister circuit issues a particular decision, and in this case, there are two, although there's a very compelling dissent in one of them. And particularly the Fifth Circuit in an immigration case. Right. Well, they were both immigration cases. That's the nature of what it happens. I know, but the Fifth, yes. The Fifth and the Ninth Circuit do a lot of immigration cases. They do. But there's a very compelling dissent, and I would argue that the dissent in the Ninth Circuit case in Saldivar is far more compelling because it points out that the Fifth Circuit bought a specious argument. And the specious argument that they bought was that this cancellation statute has two provisions. It has Provision 1 and Provision 2. Provision 1 refers to an alien lawfully admitted for permanent residence. And then the second provision says admitted in any status. And so the reasoning that the Fifth Circuit and Ninth Circuit pointed out was it says, well, that first provision says lawfully admitted. And then the second provision just says admitted in any status. So we interpret that to mean that Congress knew how to use the term lawful. But the board and the dissent in the Ninth Circuit pointed out that's not correct. The court was only looking at part of the statute. It says lawfully admitted for permanent residence. Lawful permanent residence is a term of art. So the term lawful there, it has to do with the permanent residence. And admission for lawful permanent residence is not something that occurs at the border. That's something that occurs after you come through the border. You adjust your status, right? Admission is something different. That's referring to your entry at the border. And so the board and the dissent in Saldivar pointed out that that was a mistake made by the majority in Saldivar and the Fifth Circuit in Tula, Uruguay. So while I understand that the court shouldn't create a split, you know, or shouldn't do that if it can avoid it, sometimes there's a good reason to. And there's a very compelling dissent in the Ninth Circuit decision that really points out that the interpretation of the statute that the petitioners are providing here today, it doesn't comply with the language of the statute. It really defies common sense. It creates all sorts of perverse problems with the statute that defy what Congress could have possibly intended. And again, this case presents a particular fact that was not present. So your strongest legal support for your argument is what, the dissent in the Fifth Circuit case? It's the dissent in the Ninth Circuit case, Kaczynski's dissent in Saldivar, and the board's decision in matter of Castillo and Gullo, which really explained why the Ninth Circuit and the Fifth Circuit had really reached a conclusion that didn't make any sense. All right. So your strongest argument is the dissent in the Ninth Circuit case? Yes. And the board as well. The board has pretty solid reasoning. A lot of it mirrors the dissent in the Ninth Circuit case. Counsel?  Can you help me understand? I asked your colleague a little bit about the question, the fraud example, and whether someone who shows up with fraudulent documents and gets admitted, stamped admitted, or written admitted, whatever it is, based on those fraudulent documents, is that person admitted under the statute in your view? When we look at the statute of admitted, it means lawful entry after inspection. And if, are they admitted? Like if a year later, the question is, was this person admitted based on those fraudulent documents? Are they admitted? And if so, why not? Why or why not? Under the cancellation of removal statute, no. Because it says admitted in any status. And any status really has to mean some type of law. So I'm just trying to understand how you understand this statute that says admitted means lawful entry after inspection. And so if somebody shows up with fraudulent documents and gets admitted, forget the status piece, or imagine that the admission like includes a status, mistakenly or not, whatever. But it's fraud that gets them there. In your view, is that a lawful entry after inspection or not? And just help me understand how I ought to think about that statute. I would say not because the statute specifically provides that certain types of fraud render an alien inadmissible. So there are specific provisions of the INA that set forth that they are not admissible, very clearly. Okay. But the question, all right, so but where, how do I fit that under the statute? So that's what I'm trying to get at, right? Because in that instance, they are inadmissible, right? But, you know, we're hypothesizing here that the officer made a mistake. The officer didn't catch the fraud, right? Just wasn't good enough to see the counterfeit or whatever it was. It doesn't matter. They made a mistake. And so they wrote on the piece of paper, admitted, and gave them a status, whatever it is, given the fraud that had existed. And what I'm trying to figure out is whether a year later, when it matters for some immigration reason, whether that person was admitted on that day or not. I think the government would argue in court there that the entry was procedurally irregular due to the fraud and that it wouldn't constitute an admission. But again, I want to be very clear. The procedural regularity of an entry with respect to the adjustment of status cases is not pertinent to this case with cancellation of removal. The term here is more than just admission. It's admitted in any status. I understand that distinction, but they both have admission, and then the status piece is unique here. I totally understand the status piece is a separate argument. I'm just trying to understand the admission piece. And your argument is limited to procedural irregularity? Right. With respect to what admission means? Go ahead. Oh, I'm sorry. So matter of quintilano, those are the cases where there's a way through. Because obviously, a lot of times at the border, what will happen is there'll be a long line of cars, and the immigration officers will just sometimes wave people through. And there was a question in the law pertaining to adjustment of status as to whether that was an admission. Because in order to apply for adjustment of status, you have to show that you're admitted. And so the board has held that the procedural regular entry, when you're just waved through for adjustment of status, which only uses the term admission, that that can be procedurally irregular. Now, if there's a situation of fraud where they present a false document to the officer in that situation, and it's not just merely a way through, the government would argue that that's procedurally irregular and that that shouldn't constitute an admission and that somebody shouldn't benefit from their fraud to the immigration officer. So, but there are situations, I mean, you could argue that way throughs can be errors, right? Sometimes people are waved through who probably shouldn't be admitted to the United States. They may be admissible for any number of different reasons. But again, that is in the context of a statute pertaining to adjustment of status that only uses the term admission. And the board has limited its discussion about whether a way through is an admission only to that statute. It has not extended that sort of- And that discussion, that's the same discussion that you've talked to Judge Thacker about with respect to the Fifth and the Ninth and the BIA's decision thereafter. That's that same discussion. Exactly. And this is not the discussion in this case, for several reasons. Look, even if you bought the reasoning, which is specious reasoning, of the majority in the Fifth Circuit, that's not relevant here. Neither of those cases had to do with an individual who was paroled into the United States. But you're asking me to buy the reasoning, or us, to buy the reasoning that admitted does not mean admitted. Well, paroled definitely doesn't mean admitted. Right, and the immigration officer could have stamped paroled, but the stamp is admitted. Well, again, I don't know exactly what stamps were available to the immigration officer, but it's clear that the immigration officer wrote, handwritten into the stamp, D.E.D. And D.E.D. does not entitle an individual to be admitted. Could the immigration officer have written paroled? Let's assume they didn't have a stamp, which I suspect they have a stamp. But let's assume they didn't, and could they have written it? Could they have written paroled? Or is that too many letters, so they just wrote D.E.D.? They wrote D.E.D., but it's important to understand what that means. D.E.D. does not entitle an individual to be admitted. Could they have written paroled? Could they have written paroled? It's possible, sure. But they didn't. But they didn't. So we're left with what the immigration judge made as a finding of fact. The immigration judge looked at the evidence. He saw this handwritten notation of D.E.D. and says, I think that the use of the stamp will be a fixed term admitted was simply a mistake, because it's clear that the immigration officer understood that the information was The immigration judge, you're saying, made a finding of fact that using the stamp in this case admitted that the D.E.D., that that was erroneous? No. That using the fixed term admitted in the stamp, that that appears to have been a mistake, but that it's clear that the immigration officer understood the basis for entry. Remember, the petitioner is not admissible. What part was the mistake? Stamping admitted? Yes. So what should the immigration officer have done, in your view? The immigration officer did exactly what he should have done. He made a notation, handwritten within the stamp, that indicated what the actual reason for entry was, which was D.E.D. And the only way that the petitioner could have reentered under D.E.D. is by parole. And that's consistent with the fact that she admits that she applied for advanced parole. She admits in her brief that she used the advanced parole document. All right. So what's the effect? That's in page five of her brief. Okay. So what's the effect, in your view, of the immigration judge's finding as to the incorrectness of using the admitted designation? How does that affect the resolution of this case? Okay. Well, in order for the court to say that the immigration judge got that wrong, it would have to overturn that finding of fact. The only way the court can do that is by finding that the record compels a contrary conclusion. But the record doesn't compel a contrary conclusion here because there is a handwritten notation that shows that the immigration judge, excuse me, the immigration officer understood why this person was being allowed entry to the United States. Because the officer wrote D.E.D., it's evident from the record, or at least a reasonable mind could conclude, that the immigration judge, the immigration officer, was admitting the person under the advanced parole document, which they concede they used to reenter the country. And so because it's parole, I mean, the statute is clear. Parole shall not be regarded as an admission. Plain language does not get any plainer than that. And because that is the factual finding of this case, and petitioners never disputed that factual finding, they concede in their brief that they used this document. They now, in their reply brief, have sort of belatedly tried to suggest, well, maybe we didn't use it or maybe we didn't. But that's not what the facts of the case are as established in this record. Alright, now that you've talked about why admitted doesn't mean admitted, do you also want to get to your argument about why any doesn't mean any? Well, any status doesn't mean status and no status. That is, frankly, I think the dissenters pointed out that's something of a silly argument. What dissent? That's totally right.  Did you say the dissent? You think the dissent has pointed out? What dissent? The dissent in Seldavar. You're back to the Ninth Circuit dissent. That's the weight of your authority for your argument is a dissent in a Ninth Circuit opinion. And the BIA. Well, there's only two opinions on the matter. Alright, so how is it that any doesn't mean any? It's not that any doesn't mean any. It's the term is any status. Right, and the term is not any legal status. It's any status. Right, but no status isn't status, and that's the point. What did you just say? No status isn't status. No status does not constitute any status.  Saying that somebody doesn't have any status, look, why would Congress mention status at all if you could show either some status or no status? That doesn't make any sense. They would have just stopped at the word admitted. They could have just said you're eligible if you're admitted. But by saying admitted in any status, they must want to cut off at least some people. I mean, 100% of the people either fall into the category of legal status or illegal status, or status or no status. That covers 100% of the people. So why would Congress mention status at all if it included both? That makes no sense, and that's why we're relying on dissent. The dissent points that out and says this doesn't make any sense. And why would Congress want to treat people differently? For example, suppose you defrauded somebody at the border and acquired an entry that way. Why would Congress want to give a benefit to those people over somebody who just simply jumped the border? Right, that wouldn't make any sense. It creates perverse incentives. The Ninth Circuit talked about how it creates perverse incentives a lot. When somebody's waived through at the border, that's not something that's documented. So it gives an incentive for anybody to just claim that they were waived through, and they're going to be eligible for relief. That couldn't possibly be what Congress has intended. And again, it's not just the Ninth Circuit. That has to do with respect to the any status. But there's also a Third Circuit case that's almost on all fours with this case of an individual who, like Petitioner, applied for advanced parole, entered the country on parole, was indeed, was eligible under the criteria established under the Deferred Entry Departure Memorandum, just as Petitioner here, and the Third Circuit said that's not an admission. And the Third Circuit's case is by far the one that's the most on all fours with this case. The facts of that case are almost identical with the small exception of the mistake with respect to the status. Is that the Xing case? Yes, Xing.  There wasn't any argument there that he'd been admitted when he returned after being granted advanced parole, correct? Right. So it's not identical to this case. Well, like I said, Your Honor, it's not identical with respect to the mistaken stamp. But again, that's a factual point of the IG. It's not identical with respect to the issue we're talking about, which is the mistaken stamp, or the alleged mistaken stamp. Well, there was less dispute about what the nature of the advanced parole. But our point is here, it's not, I agree it's trickier to determine in this case that the petitioner was admitted or allowed entry to the country, not admitted, sorry, allowed entry to the country based on her application for advanced parole. That's the only way you can get back in under DED. She's not admissible to the country without that advanced parole because she has no other status. If she had left under DED without applying for advanced parole, the immigration officer wouldn't have let her back in. She wouldn't have been admissible to the United States. So that's why the immigration judge made the only conclusion that he could make in this case, which is that because we have this notation that shows that the officer knew that this was DED, this could only have been an entry allowed by parole, not by admission. Can I ask a question? And you can say that you don't know the answer to this because it's not like totally on board, but can a petitioner in some other case, maybe not this one or maybe this one, argue a stoffel? Is a stoffel an argument that's available? So one of the things that just strikes me as like a little bit odd, right, is that the mistake here of putting admitted, you might imagine a world in which like a petitioner could argue a stoffel that they relied upon that in some way. I'm not sure that works here. But is that a plausible line of argument or is that just something you're not familiar with? I haven't seen a stoffel arguments pertaining to mistakes made at the border by an immigration officer. I mean, it usually comes up in the context. I mean, I've never seen it. I don't think I've seen a stoffel saying that the government is stopped from making an argument because of a mistake that an immigration officer made. That I haven't seen. It usually just arises in the context like it arises in this case where they say, well, that particular mistake has some sort of legal significance one way or the other. I haven't seen it in the context of a stoffel. Okay. I'll take care of you then. But I, you know, I don't.  I see that I'm. Thank you, Mr. Robbins. We appreciate your argument. Your time has expired and we've given you a little extra. Thank you so much for your time, Your Honors. And again, thank you for accommodating the government in the remote part. Sir. Thank you. Okay, Ms. Campos, you've got some rebuttal time. Let me ask you at the beginning, based on something opposing counsel has represented, that the immigration judge made a factual finding that use of the admitted stamp was erroneous. So, have you challenged that finding anywhere? Your Honor, we have not because that was not a finding that the immigration judge made. Okay. There was no finding of that. I'm looking at the top of JA 90. So, tell me why that's so. Your Honor, I don't have the. You can give me one second. Very first sentence. Your Honor, here the facts are undisputed that the stamp itself reads admitted. Right, I understand it. But here's the, it seems like the legal question here. If the immigration judge made a finding of fact that this was erroneous to stamp admitted and you haven't challenged that, wouldn't that be a waiver on your part and that we would have to take it as a matter of law that there was not an admission? Your Honor. You see the question I'm asking? Yes, Your Honor. We still contend that this was not a finding of fact and that the issue here is, again, the facts here are undisputed about what the stamp reads admitted. It's simply a question of whether the stamp is sufficient to meet the legal standard of an admission. So, I have two more points to make on rebuttal. It's okay with Your Honors. Ms. Montesinos-Cisneros was admitted and not paroled into the country. Opposing counsel argues that because she had an advanced parole document that this means that she was paroled into the country. Simply possessing an advanced parole document does not make you a parolee. You are paroled into the country if you present yourself at a port of entry and you are paroled into the country. And that is clearly not what happened here. The immigration here admitted Ms. Montesinos into the country as we can see through the admitted stamp. Where should I look at? I know I want you to make your second point too. What should I look at to suggest that parole is limited to presenting yourself at a port of entry and being granted parole? What's the source of the first part of that? Your Honor, a USCIS website that lists out what parole is, how a person can be eligible for parole. It seems that we often have parole with someone who's not at a port of entry, right? So they're picked up for being here illegally and then the decision is made whether to detain them or parole them. That strikes me as like not being at the port of entry. Maybe this doesn't matter. I'm just curious why the port of entry matters in that context. Your Honor, I believe that that section was looking at when a person is going to use, has like an advanced parole document. And so USCIS was clarifying that simply having an advanced parole document doesn't mean that you're a parolee. You have to actually be paroled at a port of entry. Can you respond to what opposing counsel said about no status is not status and that here there was no status? Yes, Your Honor. The status is not defined in the INA. All we can see from other dictionary definitions is that it means a person's legal condition. And something that changes a person's legal condition. And DED certainly does that. And that is why it is a status, especially for the purposes of this subsection, which read any status. So, yes. Lastly, an admission only denotes procedural regularity. Opposing counsel tried to kind of say that this section should be read together as admitted in any status. Dula Rubio and Saldivar, the Fifth and the Ninth Circuit cases, they were dealing with this specific subsection about cancellation of removal. And they read these two separately. And they had matter of quilanta and procedural regularity applied to admission. And then any status, they read it broadly. And Ms. Montesinos was admitted. Oh, sorry, Your Honors, I noticed that my time is up. But, yes. All right. Thank you very much. We're going to come down and greet counsel and send our video greetings to Mr. Robbins.
judges: G. Steven Agee, Stephanie D. Thacker, Julius N. Richardson